# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **The Regents of the University of California** | § | |
| **and Eolas Technologies Incorporated,** | § | |
| | § | |
| **Plaintiffs,** | § | **Civil Action No. 6:12-cv-621** |
| | § | |
| | § | |
| **vs.** | § | |
| | § | **JURY TRIAL** |
| **The Walt Disney Company,** | § | |
| **ESPN Internet Ventures, and** | § | |
| **American Broadcasting Companies, Inc.** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION TO STAY

## I.   BACKGROUND

On September 12, 2012, Plaintiffs filed their complaint for infringement against Disney[1]. Dkt. 1.  On that same day, Plaintiffs also filed a Motion to Stay the Disney case.  Dkt. 6.  Also on that same day, Plaintiffs filed lawsuits in this Court against Facebook, Inc. (Civil Action 6:12-cv-00619, "Facebook") and Wal-Mart Stores, Inc. (Civil Action No. 6:12-cv-620, "Wal-Mart").  As with Disney, Plaintiffs also moved to stay the Facebook and Wal-Mart actions.  As explained in Plaintiffs' Motions to Stay in each case, the purpose of the proposed stay is to conserve the resources of the parties and the Court during the pendency of Plaintiffs' appeal of the validity determination with respect to certain claims of two of the four patents-in-suit.  *See* Dkt. 6 at 2.

Facebook and Wal-Mart agreed to Plaintiffs' proposed stay, and did so without trying to extract any concession or benefit from Plaintiffs.  *See* Dkt. 14, *The Regents of the University of California v. Facebook, Inc.,* Civ. Action No. 6:12-cv-00619, slip op. at 1 (November 8, 2012); Dkt. 11, *The Regents of the University of California v. Wal-Mart Stores, Inc.*, Civil Action No. 6:12-cv-620, slip op. at 1 (October 4, 2012).  Unlike Facebook and Wal-Mart, Disney has refused to accept the stay.  Instead, Disney attempts to extract unreasonable concessions and agreements from Plaintiffs as to Disney's document preservation obligations and with respect to the accrual of damages.  Dkt. 29 at 1-2.  Plaintiffs are (and have been) willing to work with Disney to address its alleged concerns, but cannot agree to Disney's unilateral demands.

While Disney suggests that Plaintiffs' failed to work with Disney to address its concerns, the record reflects otherwise.  Disney requested—and Plaintiffs agreed to—four Motions to Extend Disney's deadline to respond to Plaintiffs' Motion to Stay.  *See* Dkt. nos. 11, 12, 13, 14, 19 and 24.  As set forth in those Motions to Extend, "[c]ounsel for the parties have been

---

[1] "Disney" refers collectively to The Walt Disney Company, and its subsidiary companies: ESPN Internet Ventures and the American Broadcasting Companies, Inc.

conferring regarding the motion to stay this case and the terms upon which Defendants would not oppose the stay." *See e.g.* Dkt. 24 at 1.  In light of the numerous prior extensions, the Court indicated on January 14, 2013 "that no further extensions will be granted."  Dkt. 25.  Disney filed its opposition to the requested stay on January 18, 2013.  Dkt. 29.  Between September 2012 and January 2013, counsel for the parties had numerous discussions related to Plaintiffs' proposed stay and Disney's alleged concerns regarding it.

## II.  ARGUMENT

Disney seeks to impose two unreasonable concessions on Plaintiffs' proposed stay.  First, Disney effectively asks Plaintiffs' to absolve it of its document preservation obligations during the pendency of any stay.  Second, Disney asks the Court to limit Plaintiffs' damages claim, so that no damages may accrue during the pendency of the stay.  Disney cites absolutely no legal authority in support of either of the concessions it asks the Court to impose upon Plaintiffs.  Disney also does not explain why it is uniquely situated as compared to the Facebook and Wal-Mart defendants—both of whom agreed to the stay, and did so without raising such concerns.  The purpose of the requested stay is simple:  preservation of the resources of the Court and the parties until such time as Plaintiffs' appeal is resolved.  Whether to grant the requested stay is solely within the discretion of the Court.  *See* Dkt. 6 at 2-3.

The only category of documents that Disney identifies as impacted by the stay is Disney's website.  Nonetheless, Disney asks the Court to order "that preserving screenshots from Defendants' current websites . . . shall satisfy Defendants' obligation to preserve documents until the stay is lifted."  Dkt. 29 at 1-2.  Disney never explains why preservation of certain screenshots related to its website absolves it from any obligation to preserve other categories of potentially relevant documents—damages information, pre-suit knowledge of Plaintiffs or its patents,

2

documents discussing Plaintiffs' prior litigations against Adobe and Microsoft, opinions of counsel, prior art, and more.  Disney certainly is not entitled to, has not cited any authority for, and the Court should not order, that preservation of some screenshots from Disney's websites "shall satisfy Defendants' obligation to preserve documents until the stay is lifted."  Disney's requested relief is not only unsupported, it is not narrowly tailored to its professed concerns.

As to document preservation related to Disney's website, Disney argues that it would be inequitable to require Disney to preserve "irrelevant web pages when minor changes occur." Dkt. 29 at 2.  In order to address Disney's concern related to "document preservation" with respect to its websites, Plaintiffs' proposed providing Disney with "an exemplary list of websites/features . . . used only for guidance in its document preservation efforts . . ." Ex. 1.  No response to this proposal was received from Disney.  In light of this, Disney's statement that Plaintiffs "declined to provide any meaningful guidance on what Defendants should preserve during the stay" (dkt. 29 at 2), is demonstrably false.  Moreover, Disney never explains why Plaintiffs' offer to provide "an exemplary list of websites/features" fails to satisfy its alleged concerns about document preservation related to its websites. Disney never explains why it— unlike Facebook and Wal-Mart in the other cases—is so uniquely situated that it alone is unable to satisfy its document preservation obligations related to its websites during the stay.  Facebook and Wal-Mart both have websites that are updated and changed frequently, thus Disney's professed concern is not unique.  Yet, both Facebook and Wal-Mart recognized the utility of Plaintiffs' proposed stay, and agreed to it without condition or complaint.

Disney's counsel at the Haltom-Doan law firm represented several defendants in the Adobe Action and thus are intimately familiar with the technology covered by the patents-in-suit and Plaintiffs' infringement allegations.  Given this familiarity, Disney's counsel is well-

equipped to provide Disney with guidance as to its document preservation obligations.  While Disney expresses concern about costs related to its document production and preservation activities, Disney is not a small "mom and pop" operation which would be unreasonably burdened by any costs it faces as related to document collection and preservation during the pendency of any stay.  Disney has a market capitalization of almost $93 Billion, reported revenue of some $42 Billion, and profits in excess of $8.8 Billion.  *See* http://finance.yahoo.com/q/ks?s=DIS+Key+Statistics.  Finally, this District recently promulgated rules and a model order on discovery and preservation of Electronically Stored Information ("ESI") in patent cases.  The Model ESI Order provides guidance to parties in cases as to the scope of their electronic document preservation obligations.  *See* http://www.txed.uscourts.gov/page1.shtml?location=rules (Appendix P).  There is no reason that Disney cannot consult the Model ESI Order, and use it to understand the scope of its document collection and preservation obligations.[2]

Disney's next complaint is that the stay should be conditioned on the non-accrual of any damages during the period of the stay.  Dkt. 29 at 3.  Disney's argument appears to be that it could file a motion arguing that no damages should accrue during the pendency of the appeal, but they cannot file such a motion if the case is stayed.  This argument is nonsensical:  the stay has no impact on legal merits of Disney's proposed motion, which would assert that no damages may accrue during the period the Federal Circuit is considering the appeal.  If the Federal Circuit reverses this Court's invalidity determination, then Disney will be able to assert any damages-limiting theories at that time—the stay has no impact on Disney's rights in this regard.

---

[2] Disney's Opposition also makes reference to a professed concern that it may "face the same spoliation arguments Eolas made in *Adobe*."  Dkt. 29 at 3.  Plaintiffs are unaware of any spoliation arguments made in the prior Adobe Action, and are unsure what this is a reference to.

4

Conversely, if the Federal Circuit affirms this Court's invalidity determination, then Disney will not be liable for any damages on the invalid claims of the two previously asserted patents.  Thus, any stay pending resolution of the appeal has no impact on Disney's damages obligations during the period the Federal Circuit is considering the appeal.[3]

As of the date of Plaintiffs' complaint Disney had actual notice of Plaintiffs' contention that Disney infringed the asserted claims of each of the four patents-in-suit.  *See e.g. K-Tec, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1379 (Fed. Cir. 2012) ("In the absence of marking a patented article, a patentee who makes, offers for sale or sells a patented article must notify a party of the infringement for damages to accrue.").  Disney cites no authority that would require Plaintiffs to waive its right to collect damages beginning when Disney received notice of its infringement via Plaintiffs' filing of their complaint.  If Disney is concerned about its potential for infringement, it will have time during the stay to develop invalidity arguments, non-infringement arguments or re-design its products to operate in a non-infringing manner.  Nothing in the stay will prevent Disney from undertaking any such good faith efforts to mitigate the effect of any accrual of damages during the pendency of any stay.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court exercise its sound discretion and stay all deadlines with respect to their complaint for patent infringement against Disney until after the Federal Circuit resolves Plaintiffs' appeal in the Adobe Action.  The stay will not prejudice Disney, and will conserve the resources of the parties and the Court.

---

[3] In the Adobe Action, Plaintiffs filed their appeal brief with the Federal Circuit, and Defendants' responsive brief is due on March 11, 2013.  The Federal Circuit appeal is on-track for resolution. Notably, Disney requested and received nearly four months of extensions to Answer the Complaint and respond to this motion.  If the last four months did not materially impact Disney and its professed concerns about document preservation and damages accrual, an additional few months to allow the Federal Circuit to consider the appeal will not materially impact Disney.

DATED:  January 29, 2013.                    Respectfully submitted,


                                             McKool Smith, P.C.


                                             /s/  Mike McKool
                                             Mike McKool
                                             Lead Attorney
                                             Texas State Bar No. 13732100
                                             mmckool@mckoolsmith.com
                                             Douglas Cawley
                                             Texas State Bar No. 04035500
                                             dcawley@mckoolsmith.com
                                             McKool Smith, P.C.
                                             300 Crescent Court, Suite 1500
                                             Dallas, Texas 75201
                                             Telephone: (214) 978-4000
                                             Telecopier: (214) 978-4044


                                             Kevin L. Burgess
                                             Texas State Bar No. 24006927
                                             kburgess@mckoolsmith.com
                                             John B. Campbell
                                             Texas State Bar No. 24036314
                                             jcampbell@mckoolsmith.com
                                             Josh W. Budwin
                                             Texas State Bar No. 24050347
                                             jbudwin@mckoolsmith.com
                                             McKool Smith, P.C.
                                             300 West Sixth Street, Suite 1700
                                             Austin, Texas 78701
                                             Telephone: (512) 692-8700
                                             Telecopier: (512) 692-8744


                                             **ATTORNEYS FOR PLAINTIFFS
                                             THE REGENTS OF THE UNIVERSITY
                                             OF CALIFORNIA AND EOLAS
                                             TECHNOLOGIES, INC.**

McKool855390

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Local Rule CV-5(a)(3)(A).


/s/ Mike McKool
Mike McKool

7